FILED

JUN 2 5 2002

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----ooOoo----

CHIRON CORPORATION,

    Plaintiff,

    v.

GENENTECH, INC.

    Defendant.

NO. CIV. S-00-1252 WBS GGH

MEMORANDUM AND ORDER RE:
WILLFUL INFRINGEMENT

----ooOoo----

In a separate order, the court has determined that Genentech's product, Herceptin, infringes Chiron's U.S. Patent No. 6,054,561 ("'561 patent"). Genentech now moves for summary judgment on Chiron's allegations of the willfulness of the infringement.[1]

I. Factual and Procedural Background

The '561 patent claims monoclonal antibodies that bind to a human breast cancer antigen known as HER2. In an order filed concurrently herewith, the court has found that Herceptin,

---

[1] The court has ruled that this case will be tried in two phases before a single jury. The jury will decide liability in the first phase, and, if necessary, willfulness and damages in the second phase. (Oct. 19, 2000 Order Re: Bifurcation.)

1

624

a breast cancer drug composed of anti-HER2 monoclonal antibodies, infringes the '561 patent. (See Mem. and Order Re: Infringement.) The court has also concluded that questions of the patent's validity cannot be resolved on summary judgment. (See Mem. and Order Re: Priority, Anticipation.)

Genentech developed Herceptin in the early 1990s and has been selling it in the United States since 1998. (Cook Dep. at 41; Johnston Decl. ¶ 4.) The '561 patent issued to Chiron on April 25, 2000. ('561 Patent.) Shortly thereafter, Chiron contacted Genentech and asserted that Herceptin infringed the patent. (Johnston Decl. ¶¶ 9, 10.) The parties entered into a litigation standstill agreement and commenced negotiations regarding the possibility of Genentech licensing the rights to the '561 patent from Chiron. (Chiron Opp'n at 2; Genentech Reply at 3.) During this time, Genentech sought advice from its in-house patent attorneys, who concluded that Herceptin did not infringe the '561 patent, and that the patent was invalid. (Juelsgaard Dep. at 19-10.) After six weeks of negotiations, Genentech declined to license the '561 patent from Chiron.[2] (Id. at 47.)

---

[2] Genentech did not discuss its conduct during this six week period in its opening brief. According to Genentech, it was obligated under the litigation standstill agreement to keep confidential the existence of the agreement and the standstill period, as well as its conduct during that time. Genentech contends that Chiron's opposition seeks an adverse inference based on Genentech's "contractually mandated silence" that Genentech did not promptly seek advice of counsel during this six week period. The court draws no such inference in Chiron's favor. The court, however, expresses no opinion as to whether Chiron breached the litigation standstill agreement by mentioning it in passing in its opposition papers. Any evidentiary issues concerning the litigation standstill agreement will be resolved, if necessary, at the time of trial.

On June 7, 2000, Chiron filed this lawsuit. Meanwhile, Genentech retained the law firm of Knobbe Martens, Olson & Bear, LLP (hereinafter "Knobbe Martens") to analyze issues of validity and infringement related to the '561 patent. (Johnston Decl. ¶¶ 9, 10; Johnston Dep. at 28-29, 46-47; Celio Decl. Ex. J at 1.) On September 28, 2000, Knobbe Martens provided Genentech with a detailed opinion letter concluding that the '561 patent was both invalid and not infringed. (Celio Decl. Ex. J.)

Chiron contends that, despite the opinions of in-house and outside counsel that the '561 patent was invalid and not infringed, Genentech willfully disregarded Chiron's rights in the '561 patent by continuing to market Herceptin without a license.

II. Discussion

The court must grant summary judgment to a moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party adverse to a motion for summary judgment may not simply deny generally the pleadings of the movant; the adverse party must designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Simply put, "a summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). The non-moving party must show more than a mere "metaphysical doubt" as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio, 475

U.S. 574, 587 (1986).

In addition, "the inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Chiron has the burden to prove willful infringement by clear and convincing evidence. Braun, Inc. v. Dynamics Corp. of America, 975 F.2d 815, 822 (Fed. Cir. 1992). Therefore, the court must take this standard into account in ruling on this motion.

Upon a finding of infringement, section 284 of the Patent Act gives the court discretion to increase the compensatory damage award "up to three times the amount found or assessed." 35 U.S.C. § 284. Two steps are involved in determining whether an award of increased damages is appropriate. First, the fact-finder must determine whether an infringer is guilty of culpable conduct upon which increased damages may be based. Jurgens v. CBK, Ltd., 80 F.3d 1566, 1570 (Fed. Cir. 1996) Second, if the first requirement is met, the court must determine in the exercise of its discretion whether, and to what extent, to increase the damages award given the totality of the circumstances. Id.

An act of willful infringement is sufficient to meet the first requirement to increase a compensatory damages award. Id. If, on the other hand, infringement is innocent, increased damages are not awardable. Read Corp. v. Portec, Inc., 970 F.2d 816, 831 (Fed. Cir. 1992). Infringement is willful if an infringer "proceeded without a reasonable belief that it would

not be held liable for infringement." Id.; see also SRI Int'l, Inc. v. Advanced Techn. Labs., 127 F.3d 1462, 1465 (Fed. Cir. 1997)("[P]recedent displays the consistent theme of whether a prudent person would have had sound reason to believe that the patent was not infringed or was invalid or unenforceable, and would be so held if litigated"). Willful infringement is a question of fact that turns on the defendant's state of mind, and "is often accompanied by questions of intent, belief, and credibility." SRI, 127 F.3d at 1464; Read, 970 F.2d at 828.

Factors for the fact-finder to consider include (1) bad faith commercial conduct, such as putting off the patentee so as to allow profitable infringement to continue; (2) the closeness or complexity of the legal and factual questions presented; (3) whether the infringer promptly sought and obtained competent legal advice; (4) an infringer's bad faith in litigation;[3] and (5) whether there was an independent invention or attempts to design around the patent, as opposed to copying. SRI, 127 F.3d at 1464, 1468; Jurgens, 80 F.3d at 1570.

1. Commercial Conduct

Chiron does not argue that Genentech engaged in bad faith commercial conduct, and there is no evidence in the record to support such a conclusion.

///

---

[3] Genentech argues that it would be error for the court to consider Genentech's litigation conduct in assessing whether Genentech's infringement was willful. While bad faith in litigation by itself is insufficient to support an increased damage award, it may be taken into account "to determine if the infringer acted willfully in light of the totality of the surrounding circumstances." Jurgens v. CBK, Ltd., 80 F.3d 1566, 1570 (Fed. Cir. 1996).

2. <u>Closeness and Complexity of Legal Issues</u>

The legal and factual issues in this case are complex, and Genentech has raised reasonable and substantial challenges to the '561 patent. This case has presented close questions regarding the proper claim construction of the patent and the patent's validity. Given the lengthy <u>Markman</u> hearing, this court's fifty-two page <u>Markman</u> order, the numerous motions and cross motions for summary judgment that have been brought, and the two days of oral argument regarding the same, no reasonable jury could conclude that the legal issues in this case were not close or complex.

3. <u>Reliance on Advice of Counsel</u>

Although the above factors weigh in favor of a non-willfulness finding, Chiron has raised a material issue of fact with regard to perhaps the most important factor in determining willfulness: whether Genentech sought and obtained competent legal advice upon which it relied before continuing its infringing activities. <u>Ortho Pharmaceutical Corp. v. Smith</u>, 959 F.2d 936, 944 (Fed. Cir. 1992). When an infringer has actual notice of a patentee's rights, the infringer has an affirmative duty of due care, which normally includes a duty to secure reliable legal advice regarding the potential infringement. <u>Id.</u> Obtaining the advice of counsel generally negates a finding of willfulness unless the advice is ignored or is found to be incompetent. <u>Comark Communications, Inc. v. Harris Corp.</u>, 156 F.3d 1182, 1191 (Fed. Cir. 1998).

It is undisputed that shortly after the '561 patent issued, Genentech sought advice both from its in-house patent

6

attorneys and from the Knobbe Martens law firm regarding whether Herceptin infringed the '561 patent or was invalid. Whether that advice was competent, and whether it was reasonable to rely on that advice, depends on a number of factors such as (1) whether counsel examined the patent file history; (2) whether the opinions were oral or written; (3) the objectivity of the opinions; (4) whether the attorneys rendering the opinions were patent lawyers; (5) whether the opinions were detailed or merely conclusory; and (6) whether material information was withheld from the attorney. Id. at 1190-93; 7 Chisum, Chisum on Patents § 20.03[4][b][v][D], at 20-368 to 20-374 (2002). Even if the advice was objectively competent, infringement is still willful if the infringer ignored the advice, or in no way relied upon it. Comark, 156 F.3d at 1191.

       1.  Advice of In-house Counsel

During its licensing negotiations with Chiron, Genentech undertook an internal analysis of the '561 patent. Leading this effort was Sean Johnston, Genentech's Vice President of Intellectual Property. (Juelsgaard Dep. at 19-10.) It appears that among the attorneys who reviewed the '561 patent was a lawyer by the name of Wendy Lee, who had prosecuted a number of Genentech's HER2 patents, including Genentech's Herceptin patents. (Lee Decl. ¶¶1, 2.) Wendy Lee's notes, created prior to May 16, 2000, conclude that Herceptin does not infringe the '561 patent, and that the patent is invalid. (Bartlett Decl. Ex. 5.) Her notes indicate that she reviewed the patent file history, from which she quotes several times. (Id.) Many of the arguments outlined in her notes have been used by Genentech in

this litigation, and have raised substantial challenges to the patent. Read, 970 F.2d at 829 n.9 ("[A] good test that the advice given is genuine and not merely self-serving is whether the asserted defenses are backed up with viable proof during trial which raises substantial questions.")

However, it is unclear to what extent Ms. Lee's opinions were conveyed to Genentech's Executive Committee, which was ultimately responsible for deciding not to license Chiron's patent. (Juelsgaard Dep. at 33-34.) No matter how competent Ms. Lee's opinion, if decision makers at Genentech were not apprised of her reasons for believing the patent was invalid and not infringed, they cannot be said to have reasonably relied on the theories disclosed in her notes. According to Stephen Juelsgaard, Genentech's general counsel and a member of the Executive Committee, the Executive Committee's decision was based on his input, which in turn was based on his discussions with Mr. Johnston. (Id. at 43.) There is no evidence that Ms. Lee's opinion or her notes were relied upon.

Whether the Executive Committee could have reasonably relied on Mr. Johnston's or Mr. Julesgaard's oral opinion is unclear. The parties' submissions do not indicate the precise substance of these opinions. If these opinions were conclusory and given without supporting reasons, they would not qualify as authoritative opinions upon which Genentech could rely in good faith. See Bott v. Four Star Corp., 807 F.3d 1567, 1572 (Fed. Cir. 1986). Moreover, oral opinions, particularly from in-house counsel, are disfavored. See Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc., 976 F.2d 1559, 1580 (Fed.

Cir. 1992)(expressing skepticism about the competence of oral opinions by in-house counsel because of difficulties of proof and credibility issues); SRI, 127 F.3d at 1467 (noting that while there is no per se rule against relying on the advice of in-house counsel, counsel's objectivity is an important factor in determining whether it was reasonable for an infringer to rely on an opinion of counsel). Therefore, the court cannot say that as a matter of law, Genentech had a good faith belief that it would not be held liable for infringement based on the advice of its in-house counsel.

    b. Knobbe Martens Opinion

  In addition to receiving the opinion of its own in-house counsel, Genentech sought an opinion letter from outside counsel Knobbe Martens. The opinion letter written by Knobbe Martens concludes that (1) Herceptin does not infringe the patent; (2) the patent is invalid because it is only entitled to a 1995 priority date; and (3) even if the patent is not entitled to a 1995 priority date, it is invalid in light of the work of Drs. Drebin and Greene. (Celio Decl. Ex. J.) The fifty-six page letter is thorough, detailed, cites the relevant case law, and was drafted by patent attorneys. (Id.) All of these facts support a finding that the opinion letter was both competent and reliable. See Underwater Devices, Inc. v. Morrison-Knudsen Co., 717 F.2d 1380, 1390 (Fed. Cir. 1983); Comark, 156 F.3d at 1190-93.

  Chiron attempts to undermine the competency of the Knobbe Martens opinion by emphasizing that Mark Benedict, the associate responsible for drafting most of the opinion, was only

9

1  in his third year of practice. (Benedict Dep. at 11, 25.)
2  Sometimes, however, the work product of lawyers in their third
3  year of practice can be more thorough and reliable than that of
4  attorneys with more years of experience. Moreover, the court
5  cannot find any deficiencies in Mr. Benedict's legal analysis
6  that would lead a reasonable person to believe his opinion letter
7  could not be relied upon. It is also undisputed that Mr.
8  Benedict's draft was reviewed and signed by a Ned Israelson, a
9  partner at Knobbe Martens who by Chiron's own admission is
10 "impressively credentialed." (Chiron Opp'n at 1; Bartlett Decl.
11 Ex. 7 at 1143; Israelsen Dep. at 21.)
12          Chiron also argues that Genentech could not have
13 reasonably relied on the non-infringement opinion in the Knobbe
14 Martens letter. The opinion letter concludes that Herceptin does
15 not infringe the '561 patent because the term "monoclonal
16 antibody" as used in the '561 patent is "limited to monoclonal
17 antibodies generated by hybridomas," and Herceptin is not
18 produced by a hybridoma. (Celio Decl. Ex. J, at 6.) Chiron
19 contends that because Genentech and counsel for Genentech had on
20 numerous occasions referred to Herceptin as a monoclonal
21 antibody, Genentech did not in good faith believe Knobbe Martens'
22 conclusion that Herceptin was not a monoclonal antibody. Chiron,
23 however, fails to account for the detailed and reasoned analysis
24 set forth in the Knobbe Martens opinion letter explaining why the
25 term "monoclonal antibody" <u>as it is used in the '561 patent</u>, does
26 not include humanized antibodies such as Herceptin. It is not
27 necessarily inconsistent for Genentech to have referred to
28 Herceptin as a monoclonal antibody in other contexts and to also

10

have believed that Herceptin is not a monoclonal antibody within the meaning of the '561 patent.

Chiron's most forceful argument is that Genentech did not seek the Knobbe Martens opinion in good faith, and failed provide Knobbe Martens with all of the information it needed to render a competent opinion. In order to provide a prophylactic defense to a charge of willful infringement,

> counsel's opinion must be premised upon the best information known to the defendant. Otherwise, the opinion is likely to be inaccurate <u>and</u> will be ineffective to indicate a defendant's good faith intent. <u>Whenever</u> material information is intentionally withheld, or the best information is intentionally not made available to counsel during the preparation of the opinion, the opinion can no longer serve its prophylactic purpose of negating a finding of willful infringement.

<u>Comark</u>, 156 F.3d at 1191 (emphasis added). Thus, withholding material information from counsel (or providing counsel with false information) is relevant to the willfulness inquiry in two ways. First, it may affect the reliability of counsel's advice to the extent the advice is premised on false or misleading information, thereby negating any argument that reliance on the advice was reasonable. Second, withholding material information is evidence of an infringer's bad faith, from which it can be inferred that the infringer did not intend to rely, and did not in fact rely on the opinion that was rendered. Either one of these two scenarios supports a finding of willfulness.[4] Chiron

---

[4] Genentech suggested at oral argument that an infringer's subjective bad faith in seeking the advice of counsel is irrelevant if the ultimate opinion rendered by counsel is fully competent and reliable. <u>Comark</u>, however, clearly indicates that whether the advice of counsel was sought in good faith is

11

has raised a material issue of fact at least with respect to the second scenario.

According to Chiron, Genentech withheld from Knobbe Martens material information about a prior art antibody, 7.16.4, discovered by Drs. Drebin and Greene. Chiron points to evidence that Genentech attorneys had both argued to the PTO and were aware of experiments demonstrating that the 7.16.4 antibody did not bind to the HER2 antigen, but failed to reveal this information to Knobbe Martens. (Bartlett Decl. Ex. 15 (Genentech notes from 1999 concluding that "Zhang's data suggests" that the 7.16.4 does not "bind specifically" to human HER2); Fendly Dep. at 181-185 (testimony from Genentech scientist Brian Fendly that based on Genentech's internal experiments, he had "no doubt" that 7.16.4 did not bind HER2, and that these results were reported to Wendy Lee); Bartlett Decl. Ex. 18 at 782; Bartlett Decl. Ex. 22 (Amendment to Genentech patent application stating that "the Drebin antibody does not specifically bind human HER2 protein");

---

relevant to the question of whether an accused infringer acted willfully. This is consistent with the analogous advice of counsel defense in criminal law, which a defendant may invoke to negate a charge of willful or deliberate wrongdoing. In the criminal context, the defendant must seek the advice of counsel in good faith, and must disclose all important and material information to the attorney. See O'Malley, et al., Federal Jury Practice & Instructions § 19.08, at 885 (5th ed. 2000)(emphasis added)(The advice of counsel defense in criminal law is available if, "before [acting or failing to act], [the d]efendant, while acting in good faith and for the purpose of securing advice on the lawfulness of [his] possible future conduct, sought and obtained the advice of an attorney whom [he] considered to be competent, and made a full and accurate report or disclosure to this attorney of all important and material facts of which [he] had knowledge or had the means of knowing, and then acted strictly in accordance with the advice [his] attorney gave following this full report or disclosure, then [the d]efendant would not be willfully or deliberately doing wrong in [performing or omitting] some act the law [forbids or requires.]")

Johnston Dep. at 232 (Genentech did not tell Knobbe Martens about the results of its experiments with 7.16.4.) Instead, the same Genentech attorneys appear to have told Knobbe Martens that the 7.16.4 antibody <u>did</u> bind to HER2 and would therefore invalidate the '561 patent as prior art. (<u>See</u>, e.g., Bartlett Decl. Ex. 14 (Letter from Wendy Lee to Mark Benedict enclosing "a paper by Zhang et al. which shows that Mab 7.16.4 binds to HER2.") The Knobbe Martens opinion concludes, consistent with the suggestions of Genentech's attorneys, that the 7.16.4 antibody is an invalidating reference. (Celio Decl. Ex. J, at 42.)

A fact finder could reasonably conclude, based on this evidence, that Genentech misrepresented information about the 7.16.4 antibody, and did so because it believed that it had no defense to infringement and was hoping to get an outside opinion that concluded otherwise. See <u>Minnesota Mining</u>, 976 F.2d at 1580 (affirming willfulness finding based in part on the fact that in-house attorney's opinion regarding prior art was inconsistent with a position the same attorney had taken in prosecuting infringer's patent).[5] An inference also arises that from the start, Genentech never intended to rely on the opinion rendered by Knobbe Martens, did not seek it in good faith, and in fact did not rely on the opinion before making the decision to continue marketing Herceptin without a license from Chiron.

---

[5] The same inference can be drawn from Genentech's bad faith conduct in this litigation; the court has found that Genentech has deliberately withheld documents related to its Drebin/Greene prior art defense during discovery. (April 26, 2000 Order Re: Sanctions). Bad faith conduct in litigation is a factor that may be considered in evaluating whether an infringer acted willfully. <u>Jurgens</u>, 80 F.3d at 1571.

Genentech argues that because the Knobbe Martens opinion provided several independent reasons why the '561 patent was invalid and infringed, Genentech's conduct with regard to the Drebin/Greene prior art defense is irrelevant to the competency of the other aspects of the opinion letter. That may be true, but it does not entitle Genentech to summary judgment. Even if other parts of the Knobbe Martens opinion could have been reasonably relied upon,[6] Genentech's failure to provide Knobbe Martens with important and potentially damaging information suggests that Genentech sought the opinion in bad faith, and did not actually rely on <u>any</u> aspect of the opinion letter.

This inference is further supported by the timing of Genentech's receipt of the Knobbe Martens opinion letter. Genentech received the letter in September of 2000, after Genentech's executive committee had already decided not to take a license from Chiron. (<u>See</u> Juelsgaard Dep. at 45, 55.) According

---

[6] Chiron, of course, argues that the other conclusions in the opinion letter are unreliable. For example, the Knobbe Martens opinion concludes that prior art other than the Drebin/Greene antibodies invalidates the '561 patent because the '561 patent is entitled to a 1995 priority date. (Celio Decl. Ex. J, at 28.) Chiron points out that within a week of receiving the Knobbe Martens opinion, Genentech learned that the PTO had rejected Genentech's arguments about the priority date of the '561 patent in connection with Genentech's prosecution of one of its own patent applications. (Bartlett Decl. Ex. 27, October 4, 2000 Office Action.) In April of 2001, the PTO came to a similar conclusion. (Bartlett Decl. Ex. 28, April 18, 2001 Office Action.) Genentech did not inform Knobbe Martens about these decisions, or ask Knobbe Martens to reevaluate its opinion in light of these decisions. (Johnston Dep. at 131-132, 134-135; Benedict Dep. at 100.) Thus, Chiron argues that Genentech intentionally failed to provide Knobbe Martens with information that might have affected other conclusions in the opinion letter, and therefore could not have reasonably relied on those conclusions. Because Chiron is entitled to summary judgment in any case, the court expresses no opinion on the merits of this particular argument.

to Mr. Julesgaard, the executive committee decided within approximately six weeks of the '561 patent's issuance that Genentech would risk litigation rather than license the '561 patent for more than a nominal value. (Id. at 47 ("Q: you described an ultimate decision by the executive committee not to license the '561 patent for anything more than a nominal value, and that discussion, I believe you placed in time roughly six weeks or so after you received the initial call from Mr. Green, is that right? A: Yes.")); see Johns Hopkins v. Cellpro, 978 F. Supp. 184 (D. Del. 1997)(finding willful infringement where opinions of outside counsel "were not prepared at a time when the CellPro board was considering whether to proceed with the apparently infringing work" but rather "after those business decisions had been made"). A jury could therefore infer that Genentech sought the outside opinion only to insulate itself from enhanced damages for willful infringement rather than for advice upon which it could rely in making its business decisions.

       Moreover, willfulness must be determined by looking at the totality of the circumstances. Comark, 156 F.3d at 1191. The facts suggestive of Genentech's bad faith with regard to the Drebin/Greene antibodies taints its entire course of conduct with Knobbe Martens, at least enough to raise a material question as to whether Genentech sought an outside opinion that it could have relied on in good faith.

       Chiron has also raised a sufficient challenge to the objectivity of the Knobbe Martens opinion to survive summary judgment. Chiron's evidence indicates that the Knobbe Martens attorney who drafted the opinion letter regularly consulted with

15


counsel for Genentech, and that Genentech's lawyers made revisions to a draft of the opinion letter. (Bartlett Decl. Ex. 7; Ex. 9.) The jury may weigh this evidence in favor of a finding of willful infringement. See Johns Hopkins Univ. v. Cellpro, 978 F. Supp. at 194 (D. Del. 1997)(considering the fact that infringer's in-house patent lawyer reviewed and revised a draft opinion from outside counsel in determining that infringement was willful). Chiron also relies on evidence that Knobbe Martens has prosecuted some patents for Genentech to call into question the objectivity of Knobbe Martens opinion. (Lee Decl.) While the court finds this inference to be rather tenuous, it is not unreasonable.

For all of these reasons, the court cannot say that as a matter of law Genentech's conduct was not willful.[7] Where, as here, the analysis turns ultimately on questions as to state of mind, summary judgment is generally inappropriate. See Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1302 (9th Cir. 1999). Accordingly, summary judgment in Genentech's favor is not warranted.

///
///

---

[7] Because the evidence regarding Genentech's reliance on advice of counsel is sufficient to preclude summary judgment in Genentech's favor, the court does not address the question of whether Genentech copied Chiron's patent, or misappropriated trade secrets from Chiron such that a jury could infer copying. See Minnesota Mining, 976 F.2d at 1580; State Indus., Inc. v. A.O. Smith, Co., 751 F.2d 1226, 1236 (Fed. Cir. 1985). Even if the court were to find that Genentech did not copy Chiron's patent, a jury could find that Genentech willfully infringed the patent by continuing to market Herceptin after the '561 patent issued.

16

IT IS THEREFORE ORDERED that Genentech's motion for summary judgment regarding Chiron's allegations of willful infringement be, and the same hereby is, DENIED.

DATED: June 24, 2002

*/s/ William B. Shubb*
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

17

United States District Court
for the
Eastern District of California
June 25, 2002

* * CERTIFICATE OF SERVICE * *

2:00-cv-01252

Chiron Corp

   v.

Genentech

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on June 25, 2002, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

```
     Eric S Walters                          SH/WBS
     Morrison and Foerster
     755 Page Mill Road
     Palo Alto, CA  94304-1018

     James M Emery
     Keker and Van Nest
     710 Sansome Street
     San Francisco, CA  94111-1704

     Michael David Celio
     Keker and Van Nest
     710 Sansome Street
     San Francisco, CA  94111-1704

     Jack Vivian Lovell
     Hunter Richey DiBenedetto and Eisenbeis
     Renaissance Tower
     801 K Street
     23rd Floor
     Sacramento, CA  95814-3525

     Rachel Krevans
     Morrison and Foerster LLP
     425 Market Street
     San Francisco, CA  94105-2482
```

Jack L. Wagner, Clerk

by: Deputy Clerk