FILED
JUN 2 5 2002
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----ooOoo----

CHIRON, CORPORATION

    Plaintiff,

v.

GENENTECH, INC.

    Defendant.

NO. CIV. S-00-1252 WBS GGH

MEMORANDUM AND ORDER RE: INDEFINITENESS

----ooOoo----

This patent infringement lawsuit involves Chiron's U.S. Patent No. 6,054,561 ("'561 patent") for monoclonal antibodies that bind to an antigen found on human breast cancer cells and tissues. Chiron and Genentech now bring cross motions for summary judgment on the Genentech's defense that the '561 patent is invalid for indefiniteness.

I. Factual and Procedural Background

The '561 patent claims monoclonal antibodies that "bind" to the HER2 breast cancer antigen. In an order dated April 22, 2002, the court construed the term "binds" to mean "a degree of attachment that is immunologically significant, i.e. a

1

626

degree of attachment that is (1) above background levels; (2) specific; (3) selective for cancer as opposed to normal cells and/or tissues; and (4) has a useful degree of affinity." (Apr. 22, 2002 Order, at 42)(hereinafter "Markman order"). Genentech argues that the term "binds" as the court has construed it is indefinite and therefore renders the patent invalid.[1]

I. Discussion

The court must grant summary judgment to a moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party adverse to a motion for summary judgment may not simply deny generally the pleadings of the movant; the adverse party must designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Simply put, "a summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). The non-moving

---

[1] In response to interrogatories served by Chiron, Genentech asserted that the terms "monoclonal antibody," "strong staining intensity," "normal tissues," "immunoassay," and "extracellular domain" were also indefinite. Genentech, however, appears to have abandoned these arguments. Chiron argued in its motion for summary judgment that these terms were definite. Genentech has not opposed Chiron's motion to the extent that it concerns the definiteness of terms other than "binds," and has moved for summary judgment that the patent is indefinite on the sole ground that "binds" has no ascertainable meaning as the court has defined it. Therefore, there appears to be no dispute that the other terms of the patent meet the definiteness requirement.

2

1 party must show more than a mere "metaphysical doubt" as to the
2 material facts. Matsushita Elec. Indus. Co. v. Zenith Radio, 475
3 U.S. 574, 587 (1986).
4 　　　　The claims of a patent must be definite enough so as to
5 "particularly point[] out and distinctly claim[] the subject
6 matter which the applicant regards as his invention." 35 U.S.C.
7 § 112. The claims must "inform the public during the life of the
8 patent of the limits of the monopoly asserted, so that it may be
9 known which features may be safely used or manufactured without a
10 license and which may not." United Carbon Co. v. Binney & Smith
11 Co., 317 U.S. 228, 232 (1942). A claim fails to meet this
12 requirement if one of ordinary skill in the art would not
13 understand the bounds of the claim when read in light of the
14 specification. Union Pac. Resource Co. v. Chesapeake Energy
15 Corp., 236 F.3d 684 (Fed. Cir. 2001); Morton Int'l, Inc. v.
16 Cardinal Chem. Co., 5 F.3d 1464, 1470 (Fed. Cir. 1993).
17 　　　　"A determination of claim indefiniteness is a legal
18 conclusion that is drawn from the court's performance of its duty
19 as the construer of patent claims." LNP Eng'g Plastics, Inc. v.
20 Miller Waste Mills, Inc., 275 F.3d 1347 (Fed. Cir. 2001).
21 Because an issued patent is presumed valid, the burden is on
22 Genentech to prove indefiniteness by clear and convincing
23 evidence. Morton Int'l, 5 F.3d at 1470. In evaluating the
24 sufficiency of the evidence on a motion for summary judgment, the
25 court must take this burden into consideration. See Eli Lilly &
26 Co. v. Barr Labs., Inc., 251 F.3d 955, 962 (Fed. Cir. 2001).
27 ///
28 ///

A.   <u>Procedural and Legal Bars to Indefiniteness Argument</u>

Chiron argues that Genentech is barred both procedurally and as a matter of law from arguing that the term "binds" is indefinite. First, Chiron contends that Genentech's motion should be denied as an improper motion for reconsideration of this court's <u>Markman</u> ruling. Although Genentech initially raised the question of whether the term "binds" was indefinite in its opening claim construction brief, it reconstituted its claim construction arguments with respect to the term "binds" both before the magistrate judge and before this court. In issuing the <u>Markman</u> order, the court did not expressly consider or expressly reject Genentech's arguments about the indefiniteness of the term "binds." Therefore, the court does not construe Genentech's motion for summary judgment as a motion for reconsideration of the <u>Markman</u> order.

Chiron next argues that because the court was able to construe the term "binds," the term cannot, as a matter of law, be indefinite. Chiron relies on <u>Exxon Research & Engineering Co. v. United States</u>, 265 F.3d 1371, 1376 (Fed. Cir. 2001), in which the Federal Circuit stated that "claims [are] indefinite only if reasonable efforts at claim construction prove futile." <u>Exxon</u>, however, did not involve a situation in which the alleged infringer was attempting to challenge a claim as indefinite after the court had construed it a certain way. The language upon which Chiron relies comes as part of a more general discussion of the indefiniteness standard; it is not the holding of the <u>Exxon</u> case. Therefore, the court does not read <u>Exxon</u> to require a finding in Chiron's favor on the issue of indefiniteness simply

4

because the court's effort to construe the term "binds" was not futile.

In fact, it is not uncommon for courts to find a claim term invalid for indefiniteness after construing the term. See Union Pacific, 236 F.3d at 688-89, 692 (affirming district court's finding that the term "comparing" was indefinite, where the district court had construed the term in a separate Markman ruling); Semmler v. American Honda Motor Co., 990 F. Supp. 967, 975 (S.D. Ohio 1997)(finding that the claim language "considerable fuel saving" was indefinite despite earlier Markman ruling that the language meant a fuel saving that one skilled in the art in 1976 would have considered large, substantial, and important). This court adopted the construction of "binds" at Chiron's urging; what that term means to a person of ordinary skill in the art is a separate question from whether it is sufficiently definite to put others in the field on notice regarding the bounds of the claims of the '561 patent.

B.  Definiteness of "Immunologically Significant" Binding

Genentech acknowledges that a scientist can measure whether an antibody's attachment to an antigen is "above background levels" and "specific." However, Genentech contends that whether binding is sufficiently "selective" or has a "useful degree of affinity" to be "immunologically significant" is too indefinite to apprise one of ordinary skill in the art as to the boundaries of the claims.

1.  Selectivity

The parties agree that whether binding is "immunologically significant" depends on whether an antibody is

useful for the purposes contemplated by the '561 patent, which include "specific binding assays, affinity purification schemes, drug or toxin targeting, imaging, and genetic or immunological therapeutics for various cancers . . . ." ('561 Patent, 1:27-31.) As the court explained in its Markman order, "selectivity" refers to the ability of an antibody to target a specific type of cell or tissue to the exclusion of others. (April 22 Order, at 40.) As Genentech points out, how selective an antibody must be for therapeutic purposes may depend on whether the therapy involves conjugating the antibody to a toxin. Because a toxin will kill the cell to which it attaches, it is important that a conjugated antibody recognize and bind to predominately breast cancer cells and tissues and not other normal cells and tissues. Some antibodies against HER2, however, are useful for therapy without being conjugated to a toxin. The accused product Herceptin, for example, inhibits a cancer cell's ability to proliferate simply by virtue of binding to the HER2 antigen. If an antibody can be therapeutically useful without being conjugated to a toxin, there is in theory less risk that binding to tissues other than breast cancer will have an adverse effect. Thus, the requisite degree of selectivity may depend on various factors.

Even so, Genentech fails to prove that a person of ordinary skill in the art, <u>reading the claim in light of the specification</u>, would not understand when binding is "selective" enough to be therapeutically useful. Union Pacific, 236 F.3d at 692. The specification of the '561 patent not only expressly defines selective binding in terms of measurable criteria, but

also describes methods to test for an antibody's selectivity:

> The selectivity and range of a given antibody is determined by testing it against panels of (a) human breast cancer tissues and cells and (b) normal human tissues or cells of breast or other origin. . . . Antibodies were deemed to bind selectively to breast cancer if they bound strongly to less than about 1/3 of the normal tissues and blood cell types.

('561 Patent Col. 17:24-41; see also 18: 31-65(describing how to test for selectivity in an immunoperoxidase staining assay).) Thus, a person skilled in the art is given considerable direction regarding when a monoclonal antibody should be "deemed selective" for purposes of coming within the scope of the patent's claims.

### 2. Useful Degree of Affinity

As with selectivity, whether an antibody has a useful degree of affinity appears to depend on several factors. Genentech's expert, Dr. Unkeless, testified at his deposition that the affinity value required for an antibody to work for purposes of diagnosis may vary depending on the type of assay that is used. (Unkeless Dep. at 71-72 ("[T]here are antibodies that will not immunoprecipitate but are wonderful for Western blotting. So for an antibody to be useful, you can't say it has to have these particular properties.")) In addition, Dr. Unkeless testified that for purposes of therapy or in vivo[2] diagnosis, "you can't pin a number affinity or avidity of an

---

[2] In vivo diagnosis involves administering a labeled monoclonal antibody to a patient and tracking it in the patient's body. In vitro diagnosis tests for breast cancer by running assays and other tests in the laboratory.

7

antibody to say, above this it will work, below that it won't."[3] (Id. at 72.)

Dr. Unkeless also testified, however, that he is not aware of any therapeutically or diagnostically useful antibodies having an affinity of less than $10^6$ or $10^7$. (Unkeless Dep. at 74.) Consistent with this testimony, the specification of the '561 patent discloses that the affinity values for the monoclonal antibodies exemplified in the specification range from $1.6 \times 10^6$ to $1.9 \times 10^9$. ('561 Patent at 25:46-48; Cert. of Corr. at 4.) The specification also discusses specific binding assays in which the monoclonal antibodies should be useful, as well as how to test an antibody's affinity value. (See '561 Patent at 9:55-10:5.)

Rather than demonstrate that the term "binds" is indefinite, Dr. Unkeless's testimony supports the opposite conclusion. "[I]f the language is as precise as the subject matter permits, the courts can demand no more." Shatterproof Glass Corp. v. Libbey-Owens Ford, Co., 758 F.3d 613, 624 (Fed. Cir. 1984); Hybritech, Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367 (Fed. Cir. 1986). If, as Dr. Unkeless suggests, it is impossible to define a useful level of affinity by reference to a

---

[3] Chiron urges the court to ignore Dr. Unkeless's testimony, alleging that it is outside the scope of his expert report and deposition testimony and violates a case management order of January 18, 2001. First, the court notes that Dr. Unkeless's deposition testimony cannot be outside the scope of his deposition testimony. Second, the January 2001 order precludes an expert from testifying at trial regarding any information gathered, or an opinion formed after his deposition. Finally, Dr. Unkeless's expert report states: "there is no threshold for avidity or affinity," which is consistent with the evidence submitted by Genentech in support of its summary judgment motion.

particular numerical value, the '561 patent cannot be expected - and is not required as a matter of law - to list every possible affinity value that might be useful for every possible purpose of the invention.

Moreover, simply because a broad range of affinities may be useful does not make the claims indefinite. It is well settled that "[b]readth is not to be equated with indefiniteness." <u>Union Pacific</u>, 236 F.3d at 691 (quoting <u>In re Miller</u>, 441 F.2d 689, 693 (CCPA 1971)). Thus, the claims may permissibly encompass a wide range of affinity values (indeed, according to the specification the exemplary antibodies range in affinity value from $1.6 \times 10^6$ to $1.9 \times 10^9$). The relevant question is whether a person of ordinary skill in the art would understand when a monoclonal antibody has an affinity value that is "useful" for the purposes described in the specification.

Importantly, Dr. Unkeless did not testify that it would be impossible for a person of ordinary skill in the art to consider the factors he identified to ascertain whether an antibody has a useful degree of affinity and therefore falls within the scope of the claims. Rather, he testified that "I can only say that, that in looking to the effect that any antibody has in any given system, you have to try it," which, if anything, suggests that one of ordinary skill in the art <u>could</u> determine whether an antibody binds with a useful degree of affinity in a particular application. (Unkeless Dep. at 73.) See <u>LNP Eng'g Plastics</u>, 275 F.3d at 1356, 1360 (Fed. Cir. 2001)(claim term "substantially and completely wetted" was not indefinite, where tests to determine wettedness were known in the art and mentioned

9

in the specification); Exxon, 265 F.3d at 1379 (Fed. Cir. 2001)(finding the term "period sufficient to increase substantially the initial catalyst activity" definite where expert testimony established that the "period sufficient" could be ascertained by conducting activity checks).

In fact, Dr. Unkeless's testimony that he is not aware of a useful antibody having an affinity value lower than $10^6$ or $10^7$ indicates not only that scientists have been able to recognize the circumstances in which an antibody binds with a useful degree of affinity for diagnosis and therapy, but also that the inquiry is not completely boundless. Contrast STX v. Brine, Inc., 37 F. Supp. 2d 740 (D. Md. 1999)(finding claim for a lacrosse stick with "improved handling and playing characteristics" indefinite because the standard was subjective on so many different levels it was impossible to determine the scope); Amgen, Inc. v. Chugai Pharm. Co., 927 F.2d 1200 (Fed. Cir. 1991)(finding claims covering a drug with an activity level of "at least about 160,000" units of potency indefinite where measuring activity was imprecise, the inventors themselves had questioned whether a specific affinity value fell within the scope of the claims, and there was no suggestion in the specification, prosecution history, or prior art regarding what range of activity was covered).

Genentech's use of similar terminology without apparent difficulty in arguing that the '561 patent is invalid in light of prior art, and in its own patent applications, is yet another indication that what is meant by a "useful degree of affinity" is not indefinite. For example, in performing an experiment to

demonstrate that Chiron's patent was invalid in light of prior art, Genentech's expert Dr. Frackelton was able to test whether an antibody known as 2G8 bound to HER2 with a "useful degree of affinity" in an immunoprecipitation assay so as to identify and isolate the HER2 protein. (See Genentech's Mem. of P & A in Opp'n to Chiron's Mot. S.J. Re: Sections 102 and 103 Invalidity, at 6, 10; Emery Decl. Ex. P); Rosemount, Inc. v. Beckman Instruments, Inc., 727 F.2d 1540, 1547 (Fed. Cir. 1984)(refusing to invalidate patent where the party asserting indefiniteness had no trouble applying the terms of the claim to prior art references). Dr. Frackelton's experiment demonstrates that persons of ordinary skill in the art are equipped to determine when an antibody has a degree of affinity that is "useful" for the purposes described in the patent.

     In addition, one of Genentech's own patent applications uses the term "affinity" in the same supposedly ambiguous manner that the court has used the term. Genentech's application, entitled "Humanized Anti-ErbB2 Antibodies and Treatment with Anti-ErbB2 Antibodies," states:

> An antibody "which binds" an antigen of interest, e.g. ErbB2 antigen, is one capable of binding that antigen with <u>sufficient affinity such that the antibody is useful as a therapeutic agent in targeting a cell expressing the antigen</u>.

(Jorjani Decl. Ex. 13)(emphasis added). Genentech's use of the phrase "sufficient affinity" in its own patent application belies its contention that one of ordinary skill in the art would not understand when an antibody has sufficient affinity to be "useful" for therapy. See Rosemount, 727 F.2d at 1547 (Fed. Cir. 1984)(finding a term definite where the party asserting

11

invalidity used the allegedly indefinite term in describing its own products); Bausch & Lomb, Inc. v. Alcon Labs., Inc., 79 F. Supp. 2d 243, 250-51 (W.D.N.Y. 1999)(finding term "substantially" not indefinite because, among other things, the defendant had used it in its own patents); W.R. Grace & Co. v. Intercat, Inc., 7 F. Supp. 2d 425, 467 (D. Del. 1997), aff'd 155 F.3d 572 (Fed. Cir. 1998)(finding the defendant's indefiniteness defense "especially unavailing" given the defendant's "own ease, prior to this litigation," in using the supposedly indefinite term).

Genentech argues that its patent application is different from the '561 patent because its application requires that the antibody either (1) reduce the number of cancer cells or tumor size, or (2) inhibit cancer cell infiltration of peripheral organs, tumor mestastasis of tumor growth, or (3) relieve cancer symptoms. However, these additional requirements provide no more information about what degree of affinity is useful; the same factors that might influence the range of affinity values of the monoclonal antibodies claimed in Chiron's patent could influence the range of affinity values of the antibodies claimed in Genentech's patent application.

Genentech has failed to show by clear and convincing evidence that a person of ordinary skill in the art would not understand when an antibody has a "useful degree of affinity" such that it falls within the scope of the claims of the '561 patent. Nor has Genentech shown that the "selectivity" required for immunologically significant binding is indefinite in light of the specification. The court accordingly finds that the term "binds" is not indefinite.

IT IS THEREFORE ORDERED that summary judgment be, and the same hereby is, GRANTED to Chiron and DENIED to Genentech on Genentech's defense and counterclaim that the '561 patent is invalid for indefiniteness.

DATED: June 24, 2002

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

United States District Court
for the
Eastern District of California
June 25, 2002

* * CERTIFICATE OF SERVICE * *

2:00-cv-01252

Chiron Corp

    v.

Genentech

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on  June 25, 2002, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

    Eric S Walters                                         SH/WBS
    Morrison and Foerster
    755 Page Mill Road
    Palo Alto, CA   94304-1018

    James M Emery
    Keker and Van Nest
    710 Sansome Street
    San Francisco, CA   94111-1704

    Michael David Celio
    Keker and Van Nest
    710 Sansome Street
    San Francisco, CA   94111-1704

    Jack Vivian Lovell
    Hunter Richey DiBenedetto and Eisenbeis
    Renaissance Tower
    801 K Street
    23rd Floor
    Sacramento, CA   95814-3525

    Rachel Krevans
    Morrison and Foerster LLP               Jack L. Wagner, Clerk
    425 Market Street
    San Francisco, CA   94105-2482

                                                          by: Deputy Clerk